UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSE LUIS PEREZ and PEDRO SANTIAGO
ZACARIAZ,

                            Plaintiffs,

        v.

ULTRA SHINE CAR WASH, INC., ADELINO F.
PASTILHA, and JUAN MENDEZ,

                            Defendants.

No. 20-CV-782 (KMK)

ORDER

KENNETH M. KARAS, United States District Judge:

        Jose Luis Perez ("Perez") and Pedro Santiago Zacariaz ("Zacariaz"; collectively,

"Plaintiffs") brought this Action against their former employer, Ultra Shine Car Wash, Inc.

("Ultra Shine"), Ultra Shine's president and chief executive officer, Adelino F. Pastilha

("Pastilha"), and Ultra Shine's manager, Juan Mendez ("Mendez"; collectively, "Defendants"),

pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the

New York Labor Law ("NYLL"), § 190 *et seq.*  (Compl. ¶¶ 7–9, 12–13, 59–86 (Dkt. No. 1).)

The Parties now seek approval of their proposed settlement (the "Proposed Settlement

Agreement" or "PSA").  (Letter from Justin Cilenti, Esq., to Court (March 9, 2021) ("Joint

Letter") Ex. 1 ("PSA") (Dkt. Nos. 29, 29-1).)  For the reasons that follow, the Parties'

Application is denied without prejudice.

I.  Background

A.  Factual Background

        Plaintiffs are former attendants at Ultra Shine, a car wash in Yonkers, New York, where

they were responsible for cleaning and detailing customers' vehicles.  (Compl. ¶¶ 7, 12–13; Joint

Letter 2.)  According to the Complaint, Perez worked at Ultra Shine from 2010 until around

October 2019, while Zacariaz worked there from around January 2019 until around October

2019.  (Compl. ¶¶ 12–13.)[1]  Plaintiffs allege that for the entire duration of their employment with

Ultra Shine, they worked six days and a total of 65 hours each week, "weather permitting."

(*Id.* ¶¶ 27, 41.)  Perez and Zacariaz were both non-exempt employees.  (*Id.* ¶¶ 12–13.)

Plaintiffs have asserted various wage and hour violations.  They allege that Defendants

knowingly and willfully: (i) failed to pay them a lawful minimum wage and overtime

compensation in violation of the FLSA and NYLL, (*id.* ¶¶ 2, 15–16, 29–34, 43, 46–47, 63–68,

77–78, 85); (ii) failed to pay a "spread of hours" premium for each day Plaintiffs worked a shift

over 10 hours, in violation of the NYLL, (*id.* ¶¶ 2, 17, 48, 79, 85); and (iii) misappropriated

Plaintiffs' tips in violation of the NYLL, (*id.* ¶¶ 2, 18, 36, 45, 49, 80, 85).  Finally, Plaintiffs

allege that Defendants violated various provisions of the FLSA and NYLL by failing to provide

regular wage statements and related notices, and by failing to maintain appropriate payroll and

employment records for their workers.  (*See id.* ¶¶ 35, 38, 44, 70, 81–84.)  Accordingly,

Plaintiffs sought to recover unpaid minimum wages, unpaid overtime compensation, unpaid

"spread of hours" premiums, and misappropriated tips.  (*Id.* ¶ 2.)  They also sought liquidated

damages, pre- and post-judgment interest, and attorneys' fees and costs.  (*Id.*)  Plaintiffs

purported to bring their claims individually and on behalf of a class of current and former non-

---

[1] There is a factual dispute regarding the continuity of Perez's employment at Ultra Shine.  (*See* Joint Letter 2.)  Defendants maintain that Perez did not work for Ultra Shine during an eight-month period in 2014 and a four-month period in 2016.  (*Id.*)  Perez challenges this assertion, though he concedes not working for about two weeks in 2016.  (*Id.*)  In addition, Defendants aver that Zacariaz did not begin his employment with Ultra Shine until April 29, 2019.  (*Id.* at 3.)

exempt workers who were employed by Defendants since January 29, 2017, and who were not paid a statutory minimum wage or overtime compensation.  (*Id.* ¶ 51.)

B.  Procedural History

Plaintiffs filed their Complaint on January 29, 2020.  (Dkt. No. 1.)  In a pre-motion letter filed March 25, 2020, Defendants announced their intent to move to dismiss the Action under the "first-filed rule" unless Plaintiffs agreed to strike their collective action allegations and consolidate their lawsuit with a previously filed, "nearly-identical" action pending before the Honorable Nelson Román.  (Letter from Stanley J. Silverstone, Esq., to Pls.' Counsel (Mar. 25, 2020) ("Mar. 2020 Silverstone Letter") 1 (Dkt. No. 9).)[2]  A day later, the Parties submitted a proposed stipulation by which Plaintiffs agreed to withdraw their collective action allegations, (*see* Compl. ¶¶ 51–58), and to prosecute their lawsuit only as an individual action, (*see* Proposed Stipulation 1 (Dkt. No. 10)).  The Court endorsed the stipulation on April 1, 2020, (Dkt. No. 11), and Defendants filed their Answer on April 7, 2020, (Dkt. No. 12).

On August 26, 2020, the Court held an initial conference and adopted a Case Management and Scheduling Order.  (Dkt. No. 19.)  On December 2, 2020, the Court issued an Order referring the case to mediation, (Dkt. No. 23), and simultaneously granted the Parties an additional 60 days to complete discovery, (Dkt. No. 24).  The Parties reached agreement on all issues following mediation.  (Dkt. No. 25.)  On March 9, 2021, the Parties submitted their settlement papers for the Court's approval pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).  (*See* Joint Letter; PSA.)

---

[2] The "first-filed rule" "'stands for the general proposition that 'where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances.'"  *Schucker v. Flower Foods, Inc.*, No. 16-CV-3439, 2017 WL 3668847, at *4 (S.D.N.Y. Aug. 24, 2017) (quoting *First City Nat'l Bank & Tr. Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989)).

## II.  Discussion

### A.  Standard of Review

Under Fed. R. Civ. P. 41(a)(1)(A), a plaintiff's ability to dismiss an action without a court order is made "[s]ubject to . . . any applicable federal statute."  "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."  *See* Fed. R. Civ. P. 41(a)(2).  The Second Circuit has confirmed that the FLSA is an "applicable federal statute," such that "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect."  *Cheeks*, 796 F.3d at 206, *cert. denied*, 577 U.S. 1067 (2016).[3] Consequently, "the [P]arties must satisfy the Court that their agreement is 'fair and reasonable.'" *Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15-CV-112, 2015 WL 7736551, at *1 (S.D.N.Y. Nov. 30, 2015) (citation omitted); *see also Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015) (same).

When assessing a proposed settlement for fairness, there is generally "a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement."  *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and quotation marks omitted); *see also Matheis v. NYPS, LLC*, No. 13-CV-6682, 2016 WL 519089, at *1 (S.D.N.Y.

---

[3] Although not relevant here, the Second Circuit has explained the authority of the Department of Labor to approve settlements, noting "the Secretary of Labor has the authority to 'supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under'" certain portions of the FLSA, in which case "'[t]he agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have . . . to such . . . unpaid overtime compensation' and liquidated damages due under the FLSA."  *Cheeks*, 796 F.3d at 201 n.1 (second alteration in original) (quoting 29 U.S.C. § 216(c)).

4

Feb. 4, 2016) (same); *Souza v. 65 St. Marks Bistro*, No. 15-CV-327, 2015 WL 7271747, at *4

(S.D.N.Y. Nov. 6, 2015) (same); *Martinez v. Hilton Hotels Corp.*, No. 10-CV-7688, 2013 WL

4427917, at *1 (S.D.N.Y. Aug. 20, 2013) (same).

As a number of courts have recognized, although a court should consider the totality of

the circumstances, the most significant factors include:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement
> will enable the parties to avoid anticipated burdens and expenses in establishing
> their respective claims and defenses; (3) the seriousness of the litigation risks faced
> by the parties; (4) whether the settlement agreement is the product of arm's-length
> bargaining between experienced counsel; and (5) the possibility of fraud or
> collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (citation and quotation

marks omitted); *see also Zamora v. One Fifty Fifty Seven Corp.*, No. 14-CV-8043, 2016 WL

1366653, at *1 (S.D.N.Y. Apr. 1, 2016) (same); *Garcia v. Jambox, Inc.*, No. 14-CV-3504, 2015

WL 2359502, at *2 (S.D.N.Y. Apr. 27, 2015) (same). Conversely, factors which weigh against

finding a settlement fair and reasonable include:

> (1) the presence of other employees situated similarly to the claimant; (2) a
> likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-
> compliance by the same employer or others in the same industry or geographic
> region; and (4) the desirability of a mature record and a pointed determination of
> the governing factual or legal issue to further the development of the law either in
> general or in an industry or in a workplace.

*Wolinsky*, 900 F. Supp. 2d at 336 (citation and quotation marks omitted); *see also Villalva-*

*Estrada v. SXB Rest. Corp.*, No. 14-CV-10011, 2016 WL 1275663, at *2 (S.D.N.Y. Mar. 31,

2016) (same); *Garcia*, 2015 WL 2359502, at *2 (same); *Camacho v. Ess-A-Bagel, Inc.*, No. 14-

CV-2592, 2014 WL 6985633, at *2 (S.D.N.Y. Dec. 11, 2014) (same).

Making this determination "is thus an information intensive undertaking," *Camacho*,

2014 WL 6985633, at *2, and "the [P]arties must provide the [C]ourt with enough information to

evaluate the bona fides of the dispute," *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187, 2015 WL 7871036, at *1 (S.D.N.Y. Dec. 3, 2015) (citation and quotation marks omitted).[4]  To this end, courts require information surrounding

> the nature of [the] plaintiffs' claims, . . . the litigation and negotiation process, the employers' potential exposure . . . to [the] plaintiffs . . . , the bases of estimates of [the] plaintiffs' maximum possible recovery, the probability of [the] plaintiffs' success on the merits, and evidence supporting any requested fee award.

*Id.* (first alteration in original) (quotation marks omitted) (quoting *Nights of Cabiria, LLC*, 96 F. Supp. 3d at 176).

B.  Analysis

1.  Whether Settlement Amount is Fair and Reasonable

Under the PSA, Defendants agree to pay $65,000 (the "Settlement Amount") to resolve Plaintiffs' wage and hour claims.  (PSA ¶ 1(a); Joint Letter 4.)  Of the Settlement Amount, $34,000 will go to Perez, $9,000 will go to Zacariaz, and $22,000 will go to Plaintiffs' counsel for fees and costs.  (PSA ¶ 1(a).)  Thus, Plaintiffs' net settlement—after the deduction of attorneys' fees and costs—is $43,000.[5]

Plaintiffs allege they are owed approximately $180,000 in unpaid minimum wages, overtime compensation, and "spread of hours" premiums, plus an equal amount in liquidated

---

[4] This approach is consistent with the requirement that "FLSA settlements . . . not be confidential," in part because "sealing FLSA settlements from public scrutiny could thwart the public's independent interest in assuring that employees' wages are fair." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 177–78 (S.D.N.Y. 2015) (citation and alteration omitted).

[5] Courts evaluate the fairness of a plaintiff's recovery *after* deducting attorneys' fees and costs. *See Arango v. Scotts Co., LLC*, No. 17-CV-7174, 2020 WL 5898956, at *3 (S.D.N.Y. Oct. 5, 2020); *Zorn-Hill v. A2B Taxi LLC*, Nos. 19-CV-1058, 18-CV-11165, 2020 WL 5578357, at *4 (S.D.N.Y. Sept. 17, 2020); *Garcia v. Cloister Apt Corp.*, No. 16-CV-5542, 2019 WL 1382298, at *2 (S.D.N.Y. Mar. 27, 2019).

6

damages.  (Joint Letter 4.)[6]  Thus, Plaintiffs' total alleged damages are $360,000.  A net recovery

of $43,000 would therefore represent 11.9% of Plaintiffs' total alleged damages.  Although this

amount "is not dramatically lower than similar settlements approved by courts in this [D]istrict,"

*Zorn-Hill*, 2020 WL 5578357, at *4 (allowing a subset of plaintiffs to recover a settlement

amount that was 12.5% of their best-case scenario recovery), a settlement in this range is

typically appropriate where there are "major factual and legal litigation risks," *see id.* at *5

(gathering cases); *see also Lopez v. Poko-St. Ann L.P.*, 176 F. Supp. 3d 340, 342 (S.D.N.Y.

2016) (scrutinizing settlement amount "in light of the legal and evidentiary challenges that would

face the plaintiffs in the absence of a settlement").  Here, Defendants claim to have produced

wage and hour records showing that Plaintiffs "rarely worked in excess of [50] hours in a week,

and often worked less than [40] hours per week."  (Joint Letter 3.)  As indicated *supra* note 1,

Defendants also point to significant gaps in Perez's employment with Ultra Shine in 2014 and

2016, and further argue that Zacariaz's employment began in April 2019, rather than January

2019.  (*Id.*)  But while Plaintiffs face some risk by continuing to press their case, the Court

cannot say, based on cursory representations in the Parties' Joint Letter, that this risk warrants a

recovery that is only 12% of Plaintiffs' total alleged damages.  Plaintiffs' net recovery is "lower,

as a percentage of . . . alleged damages, than the amount provided in settlements typically

approved by courts in the Second Circuit."  *Zorn-Hill*, 2020 WL 5578357, at *4.  Moreover,

because Plaintiffs were apparently paid on a per-day basis, and do not appear to have received a

---

[6] In a footnote to their Joint Letter, the Parties have written the following: "[P]laintiffs estimate that their underlying minimum wage and overtime compensation deficiency amounts to approximately $24,000 (not including 'spread of hours' or attorneys' fees), and together with liquidated and statutory damages, their total damages would approximate to $68,000."  (Joint Letter 4 n.4.)  It is unclear how this $68,000 figure relates to the $180,000 estimate provided in the body of the Parties' Joint Letter.  The Parties should clarify this point in their revised request for settlement approval.

fixed weekly salary, (*see* Joint Letter 4), the Court is skeptical that their damages should be calculated using the fluctuating workweek ("FWW") method, as Defendants argue, (*see id.* at 3).[7] Thus, in order for the Court to evaluate the factual and legal litigation risks facing Plaintiffs, the Parties should provide additional detail regarding the "wage and hour records" Defendants produced, as well as the evidence supporting their view that Plaintiffs would only be entitled to a "de minimis" recovery in the amount of $10,000.  (*See id.* at 4.)

Relatedly, the Court will not approve the PSA without additional information regarding the underlying data and methodology that were used to generate the Settlement Amount and Plaintiffs' estimated damages of $180,000.  "[T]o evaluate the fairness of a proposed settlement, the parties must provide the court with enough information to evaluate the bona fides of the dispute." *Gaspar*, 2015 WL 7871036, at *1 (citation and internal quotation marks omitted). Here, although the Parties have provided information regarding the number of hours Plaintiffs allegedly worked each week, as well as the amount they were paid, (*see* Joint Letter 2–3), the Court cannot discern how this information was used to calculate Plaintiffs' total estimated

---

[7] Defendants argue that Plaintiffs' damages are appropriately calculated using the FWW method as outlined in 29 C.F.R. § 778.114.  (Joint Letter 3.)  The Court recently discussed this methodology at considerable length in a separate FLSA case.  *See Cronk v. Hudson Valley Roofing & Sheetmetal, Inc.*, No. 20-CV-7131, 2021 WL 1885697, at *3–8 (S.D.N.Y. May 11, 2021).  As that discussion makes clear, § 778.114 provides no basis for applying the FWW method in this case, as there was (1) no contemporaneous payment of overtime and (2) no "clear and mutual understanding that the fixed salary" constituted compensation "apart from overtime premiums." *Id.* at *4 (quoting 29 C.F.R. § 778.114(a)(4)).  Although *Cronk* concluded that the Supreme Court's decision in *Overnight Motor Transportation Co. v. Missel*, 316 U.S. 572 (1942), provides an alternative basis (and a slightly more permissive standard) for applying the FWW method, *Missel* authorizes the use of this method only where the employees have received fixed weekly payments for working fluctuating hours, *see Cronk*, 2021 WL 1885697, at *6–8. That does not appear to have been the case here.  (*See* Joint Letter 4.)  It is also far from clear that *Missel*'s other requirements have been met.  *See Cronk*, 2021 WL 1885697, at *6. Accordingly, when the Parties submit a revised request for approval of the instant settlement, counsel for Defendant should separately brief the question of whether the FWW method is applicable to this case, with specific reference to case law from this Circuit.

damages of $180,000, (*see id.* at 4).  It is also unclear whether Plaintiffs' estimated damages include possible statutory damages of up to $5,000 for Defendants' alleged failure to provide wage notices.  *See* NYLL § 198.  The Parties must submit to the Court a more detailed explanation of Plaintiffs' total estimated damages and the calculation of the Settlement Amount before the Court will approve it.  *See Cronk v. Hudson Valley Roofing & Sheetmetal, Inc.*, No. 20-CV-7131, 2021 WL 38264, at *4 (S.D.N.Y. Jan. 5, 2021) (denying settlement approval request without prejudice where the Court did "not have sufficient information to determine whether the [s]ettlement [a]mount [was] fair and reasonable"); *Zekanovic v. Augies Prime Cut of Westchester, Inc.*, No. 19-CV-8216, 2020 WL 5894603, at *3 (S.D.N.Y. Oct. 5, 2020) (same); *Gaspar*, 2015 WL 7871036, at *2 (noting that although the court was satisfied with the parties' explanation of the methodology used to generate the settlement amounts, the parties had failed to submit the "underlying data" to which the methodology was applied).

### 2.  Good Faith

Despite the reservations noted above, the Court is satisfied that the PSA was negotiated competently, in good faith, at arm's length, and that there was no fraud or collusion.  (*See* Joint Letter 5 (noting that the settlement "was reached as a result of extensive arm's length negotiations between counsel who are well versed in the prosecution and defense of wage and hour actions," and with the assistance of a mediator).)

### 3.  Similarly Situated Plaintiffs

As noted, Defendants initially sought to dismiss this Action based on a previously filed, "nearly-identical" lawsuit filed by another former employee of Ultra Shine, Romel Hernandez ("Hernandez").  (Mar. 2020 Silverstone Letter 1.)  Defendants argued that Plaintiffs' collective action allegations should be stricken, and that this Action should be consolidated with

Hernandez's pending case before Judge Román.  (*Id.*)  Even after Plaintiffs withdrew their collective action allegations, Defendants reiterated their position that this Action should be consolidated with the Hernandez case.  (Dkt. No. 14.)  Indeed, on May 29, 2020, counsel for Defendants submitted a pre-motion letter to Judge Román requesting permission to file a motion for consolidation.  (*See* Dkt. No. 14 (20-CV-498 Dkt.).)  As Defense counsel noted, "[e]xcept for the named plaintiffs, the *Hernandez* [action] and [the instant] [A]ction[] have everything in common."  (*Id.*)  The cases, he wrote, involve "substantial overlap in parties, factual allegations, and legal issues."  (*Id.*)  But although Judge Román granted Defendants' request to file a consolidation motion on September 11, 2020, (*see* Dkt. No. 17 (20-CV-498 Dkt.)), Defendants withdrew their request on October 8, 2020, (*see* Dkt. No. 20 (20-CV-498 Dkt.)).  On February 11, 2021, Magistrate Judge Andrew Krause entered an order granting conditional certification of a collective action in the Hernandez case.  (*See* Dkt. No. 29 (20-CV-498 Dkt.).)

Although the presence of similarly situated plaintiffs is a factor that weighs against approving a settlement, *Wolinsky*, 900 F. Supp. 2d at 336, the Parties have not discussed this issue—or even addressed the Hernandez litigation—in their Joint Letter to the Court.  Thus, in addition to correcting the deficiencies identified above, the Parties should also address the issue of similarly situated plaintiffs when submitting their revised settlement papers for approval.

### 4.  Release Provision

"[T]he FLSA is a uniquely protective statute," *Cheeks*, 796 F.3d at 207, and courts will not approve settlement agreements that contain overly broad release provisions that would "waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues," *id.* at 206 (internal quotation marks omitted) (quoting *Nights of Cabiria*, 96 F. Supp. 3d at 181); *see also Lazaro-*

10

*Garcia v. Sengupta Food Servs.*, No. 15-CV-4259, 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015) ("If the parties wish to obtain approval of their settlement, any release provision must be limited to the claims at issue in this action."); *Gonzales v. Lovin Oven Catering of Suffolk, Inc.*, No. 14-CV-2824, 2015 WL 6550560, at *3 (E.D.N.Y. Oct. 28, 2015) (rejecting a settlement agreement where "the parties' release language . . . include[d] 'actions and/or claims against the [d]efendants, known or unknown, which [the plaintiff] may have as of the date of this [a]greement including but not limited to any alleged violation of any federal, state or local law, regulation, rule or ordinance which relates in any way to [the] [d]efendants' payment of wages to [the] [p]laintiff during [the] [p]laintiff's employment with [the] [d]efendants'"); *Flood v. Carlson Rests. Inc.*, No. 14-CV-2740, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015) (rejecting a settlement agreement that, in effect, "waive[d] any possible claims against [the] [d]efendants— including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues").  Here, the PSA release provides in relevant part that

> Plaintiffs, with respect solely and only to conduct that has arisen on, or prior to, the date this Agreement is executed, fully and forever release . . . Defendants . . . from all actions . . . concerning wage and hour matters including any and all claims arising under the [FLSA], the [NYLL], and the Wage Theft Prevention Act . . . during Plaintiffs' employment with the Defendants[.]  This release is limited solely and only to wage and hour claims that have arisen on, or prior to, the date this Agreement is executed . . . .

(PSA ¶ 3.)  Releases must generally be limited to wage and hour issues, *see Cheeks*, 796 F.3d at 206, and "may include claims not presented and even those which could not have been presented, but only when the released conduct arises out of the identical factual predicate as the settled conduct," *Nights of Cabiria*, 96 F. Supp. 3d at 181 (citation and quotation marks omitted).  Here, "while broad, the terms of the release . . . relate[] specifically to wage and hour issues without encompassing, for example, prospective discrimination claims."  *Pucciarelli v. Lakeview*

*Cars, Inc.*, No. 16-CV-475, 2017 WL 2778029, at *4 (E.D.N.Y. June 26, 2017); *cf. Rojas v. Bronx Moon LLC*, No. 17-CV-5825, 2018 WL 4931540, at *3 (S.D.N.Y. Oct. 10, 2018) (rejecting proposed settlement releasing "any and all FLSA claims and NYLL claims of any kind or nature").  Therefore, the Court approves the release.

>     5.  Attorneys' Fees

Under both the FLSA and NYLL, a successful plaintiff—including one who settles—is entitled to attorneys' fees.  *See Lizondro-Garcia v. Kefi LLC*, No. 12-CV-1906, 2015 WL 4006896, at *2 (S.D.N.Y. July 1, 2015) (citing, inter alia, 29 U.S.C. § 216(b), NYLL §§ 198, 663(1)).  Although courts may elect to award fees by considering either the lodestar method—the reasonable hourly rate of the attorney multiplied by the number of hours reasonably expended— or the percentage method—a percentage of the total amount recovered by the plaintiffs—"[t]he trend in [the Second] Circuit is toward the percentage method."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005).  But even where attorneys' fees are sought pursuant to the percentage of the fund method, "counsel must submit evidence providing a factual basis for the award."  *Wolinsky*, 900 F. Supp. 2d at 336; *see also Guareno v. Vincent Perito, Inc.*, No. 14-CV-1635, 2014 WL 4953746, at *2 (S.D.N.Y. Sept. 26, 2014) ("Counsel must provide a factual basis for a fee award, typically with contemporaneous time records.").  A proper fee request thus includes "contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done."  *Nights of Cabiria*, 96 F. Supp. 3d at 181. The Court must also determine the reasonable hourly rate by considering the "prevailing market rate for lawyers in the district in which the ruling court sits."  *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 507 (S.D.N.Y. 2012).

Here, Plaintiffs' counsel seeks an award of $22,000, (Joint Letter 5), which is approximately 33.8% of the Settlement Amount.  Courts in the Second Circuit routinely award attorneys' fees in FLSA settlements of one-third of the total recovery.  *See Zorn-Hill*, 2020 WL 5578357, at *6 (collecting cases); *Garcia v. Atlantico Bakery Corp.*, No. 13-CV-1904, 2016 WL 3636659, at *1 (S.D.N.Y. June 29, 2016) ("[O]ne-third of the total award is the customary contingency percentage in FLSA cases."); *see also Ocasio v. Big Apple Sanitation, Inc.*, No. 13-CV-4758, 2016 WL 5376241, at *2 (E.D.N.Y. Mar. 16, 2016) (noting that the fee sought was "less than the typical contingency fee percentage of 33 1/3%"), *adopted by* 2016 WL 5390123 (E.D.N.Y. Sept. 26, 2016).  However, "significantly smaller awards are also common where warranted by the facts of a particular case"—for example, when "settlement has been reached in a relatively short period of time, with little, if any, discovery or motion practice."  *Guzman v. Joesons Auto Parts*, No. 11-CV-4543, 2013 WL 2898154, at *4 (E.D.N.Y. June 13, 2013) (collecting cases).

Although the proposed attorneys' fees appear reasonable, Plaintiffs' counsel has not provided "contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done."  *Nights of Cabiria*, 96 F. Supp. 3d at 181.  The Court must have this information to make a final determination whether the proposed award is reasonable.  Thus, Plaintiffs' counsel is instructed to provide this information, along with supporting documentation, in the Parties' revised request for settlement approval.

## III. Conclusion

For the foregoing reasons, the Parties' request for approval of their Proposed Settlement Agreement is denied without prejudice. The Parties may reapply for approval of a settlement that complies with the Court's determinations in this Order.

13

SO ORDERED.

DATED:      May 17, 2021
            White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

14