UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOSE LUIS PEREZ and PEDRO SANTIAGO ZACARIAZ, *on behalf of themselves and others similarly situated*,

                Plaintiffs,

v.

ULTRA SHINE CAR WASH, INC., ADELINO F. PASTILHA, and JUAN MENDEZ,

                Defendants.

No. 20-CV-782 (KMK)

OPINION & ORDER

---

Appearances:

Giustino Cilenti, Esq.
Cilenti & Cooper, PLLC
New York, NY
*Counsel for Plaintiff*

Stanley J. Silverstone
Law Office of Stanley J. Silverstone
New City, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

      Jose Luis Perez ("Perez") and Pedro Santiago Zacariaz ("Zacariaz"; collectively, "Plaintiffs") brought this Action against their former employer, Ultra Shine Car Wash, Inc. ("Ultra Shine"), Ultra Shine's president and chief executive officer, Adelino F. Pastilha ("Pastilha"), and Ultra Shine's manager, Juan Mendez ("Mendez"; collectively, "Defendants"), pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), § 190 *et seq.* (*See generally* Compl. (Dkt. No. 1).) The Parties now seek approval of their proposed settlement (the "Proposed Settlement Agreement" or

"PSA").  (Letter from Justin Cilenti, Esq., to Court (March 9, 2021) ("First Joint Letter") Ex. 1 ("PSA") (Dkt. Nos. 29, 29-1).); *see also* Letter from Justin Cilenti, Esq., to Court (August 31, 2021) ("Second Joint Letter") (Dkt. No. 34).)  For the reasons that follow, the Parties' Application is granted.

I. Background

A. Factual Background

Plaintiffs are former car washer attendants at Ultra Shine, a car wash in Yonkers, New York.  (Compl. ¶¶ 12–13.)  In this capacity, Plaintiffs were responsible for cleaning and detailing customers' vehicles.  (Compl. ¶¶ 12–13; Second Joint Letter 1–2.)  Perez worked at Ultra Shine from 2010 until approximately October 2019, while Zacariaz worked there from January to October 2019.  (Compl. ¶¶ 12–13.)[1]  Plaintiffs allege that for the entire duration of their employment with Ultra Shine, they worked six days and a total of 65 hours each week, "weather permitting."  (*Id.* ¶¶ 27, 41.)  Perez and Zacariaz were both non-exempt employees.  (*Id.* ¶¶ 12–13.)

Plaintiffs have asserted various wage and hour violations.  They allege that Defendants knowingly and willfully: (i) failed to pay them a lawful minimum wage and overtime compensation in violation of the FLSA and NYLL, (*id.* ¶¶ 2, 15–16, 29–34, 43, 46–47, 63–68, 77–78, 85); (ii) failed to pay a "spread of hours" premium for each day Plaintiffs worked a shift over 10 hours, in violation of the NYLL, (*id.* ¶¶ 2, 17, 48, 79, 85); and (iii) misappropriated Plaintiffs' tips in violation of the NYLL, (*id.* ¶¶ 2, 18, 36, 45, 49, 80, 85).  Finally, Plaintiffs

---

[1] There is a factual dispute regarding the continuity of Perez's employment at Ultra Shine.  (*See* Second Joint Letter 2.)  Defendants maintain that Perez did not work for Ultra Shine during an eight-month period in 2014 and a four-month period in 2016.  (*Id.*)  Perez challenges this assertion, though he concedes not working for about two weeks in 2016.  (*Id.*)

allege that Defendants violated various provisions of the FLSA and NYLL by failing to provide regular wage statements and related notices, and by failing to maintain appropriate payroll and employment records for their workers. (*See id.* ¶¶ 35, 38, 44, 70, 81–84.) Accordingly, Plaintiffs sought to recover unpaid minimum wages, unpaid overtime compensation, unpaid "spread of hours" premiums, and misappropriated tips. (*Id.* ¶ 2.) They also sought liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs. (*Id.*) Plaintiffs purported to bring their claims individually and on behalf of a class of current and former non-exempt workers who were employed by Defendants since January 29, 2017, and who were not paid a statutory minimum wage or overtime compensation. (*Id.* ¶ 51.)

B.  Procedural History

Because the procedural background of this Action has been summarized in this Court's Order dated May 15, 2021, this Court supplements the procedural history of the case since the issuance of that order. (*See* Order ("2021 Order") at 3 (Dkt. No. 30).)

In the 2021 Order, Court denied the Parties' request for approval of their Proposed Settlement Agreement without prejudice. (*Id.*) On August 31, 2021, after a filing error, (*see* Dkt. Nos. 32–33), the Parties submitted their revised settlement papers for the Court's approval pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). (*See* PSA; Second Joint Letter.)

II.  Discussion

A.  Standard of Review

Under Fed. R. Civ. P. 41(a)(1)(A), a plaintiff's ability to dismiss an action without a court order is made "[s]ubject to . . . any applicable federal statute." "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that

3

the court considers proper." *See* Fed. R. Civ. P. 41(a)(2). The Second Circuit has confirmed that the FLSA is an "applicable federal statute," such that "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Cheeks*, 796 F.3d at 206, *cert. denied*, 577 U.S. 1067 (2016). Consequently, "the [P]arties must satisfy the Court that their agreement is 'fair and reasonable.'" *Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15-CV-112, 2015 WL 7736551, at *1 (S.D.N.Y. Nov. 30, 2015) (citation omitted); *see also Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015) (same); *Briggs v. DPV Transportation, Inc.*, No. 21-CV-6738, 2021 WL 6111917, at *2 (S.D.N.Y. Dec. 27, 2021) (same).

When assessing a proposed settlement for fairness, there is generally "a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and quotation marks omitted); *see also Matheis v. NYPS, LLC*, No. 13-CV-6682, 2016 WL 519089, at *1 (S.D.N.Y. Feb. 4, 2016) (same); *Souza v. 65 St. Marks Bistro*, No. 15-CV-327, 2015 WL 7271747, at *4 (S.D.N.Y. Nov. 6, 2015) (same); *Martinez v. Hilton Hotels Corp.*, No. 10-CV-7688, 2013 WL 4427917, at *1 (S.D.N.Y. Aug. 20, 2013) (same).

As a number of courts have recognized, although a court should consider the totality of the circumstances, the most significant factors include:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

4

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (citation and quotation marks omitted); *see also Zamora v. One Fifty Fifty Seven Corp.*, No. 14-CV-8043, 2016 WL 1366653, at *1 (S.D.N.Y. Apr. 1, 2016) (same); *Garcia v. Jambox, Inc.*, No. 14-CV-3504, 2015 WL 2359502, at *2 (S.D.N.Y. Apr. 27, 2015) (same). Conversely, factors which weigh against finding a settlement fair and reasonable include:

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Wolinsky*, 900 F. Supp. 2d at 336 (citation and quotation marks omitted); *see also Villalva-Estrada v. SXB Rest. Corp.*, No. 14-CV-10011, 2016 WL 1275663, at *2 (S.D.N.Y. Mar. 31, 2016) (same); *Jambox*, 2015 WL 2359502, at *2 (same); *Camacho v. Ess-A-Bagel, Inc.*, No. 14-CV-2592, 2014 WL 6985633, at *2 (S.D.N.Y. Dec. 11, 2014) (same).

Making this determination "is thus an information intensive undertaking," *Camacho*, 2014 WL 6985633, at *2, and "the [P]arties must provide the [C]ourt with enough information to evaluate the bona fides of the dispute," *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187, 2015 WL 7871036, at *1 (S.D.N.Y. Dec. 3, 2015) (citation and quotation marks omitted).[2] To this end, courts require information surrounding

> the nature of [the] plaintiffs' claims, . . . the litigation and negotiation process, the employers' potential exposure . . . to [the] plaintiffs . . . , the bases of estimates of [the] plaintiffs' maximum possible recovery, the probability of [the] plaintiffs' success on the merits, and evidence supporting any requested fee award.

---

[2] This approach is consistent with the requirement that "FLSA settlements . . . not be confidential," in part because "sealing FLSA settlements from public scrutiny could thwart the public's independent interest in assuring that employees' wages are fair." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 177–78 (S.D.N.Y. 2015) (citation and alteration omitted).

*Id.* (first alteration in original) (quotation marks omitted) (quoting *Nights of Cabiria, LLC*, 96 F. Supp. 3d at 176).

    B.  Analysis

        1.  Whether Settlement Amount is Fair and Reasonable

Under the PSA, Defendants agreed to pay $65,000 (the "Settlement Amount") to resolve Plaintiffs' claims. (PSA ¶ 1(a); Second Joint Letter 7.) Of the Settlement Amount, $34,000 will go to Perez, $9,000 will go to Zacariaz, and $22,000 will go to Plaintiffs' counsel for fees and costs. (PSA ¶ 1(a); Second Joint Letter 7.) Thus, Plaintiffs' net settlement—after the deduction of attorneys' fees and costs—is $43,000.[3]

Plaintiffs allege they are owed approximately $180,000 in unpaid minimum wages, overtime compensation, and "spread of hours" premiums, plus an equal amount in liquidated damages. (Second Joint Letter 3.) When including liquated and statutory damages, Plaintiffs' total alleged damages are $381,532.32. (*Id.*) A net recovery of $43,000 would therefore represent 11.27% of Plaintiffs' total alleged damages.

To be sure, 11.27% is "lower than similar settlements approved by courts in this [D]istrict." *Zorn-Hill v. A2B Taxi LLC*, Nos. 19-CV-1058, 18-CV-11165, 2020 WL 5578357, at *4 (S.D.N.Y. Sept. 17, 2020). The question is whether this figure is too low. Importantly, the Court may not consider this figure in a vacuum, but instead views it "in light of the legal and evidentiary challenges that would face the plaintiffs in the absence of a settlement." *Lopez v. Poko-St. Ann L.P.*, 176 F. Supp. 3d 340, 342 (S.D.N.Y. 2016). To that end, courts in this district

---

[3] Courts evaluate the fairness of a plaintiff's recovery after deducting attorneys' fees and costs. *See Arango v. Scotts Co., LLC*, No. 17-CV-7174, 2020 WL 5898956, at *3 (S.D.N.Y. Oct. 5, 2020); *Zorn-Hill v. A2B Taxi LLC*, Nos. 19-CV-1058, 18-CV-11165, 2020 WL 5578357, at *4 (S.D.N.Y. Sept. 17, 2020); *Garcia v. Cloister Apt Corp.*, No. 16-CV-5542, 2019 WL 1382298, at *2 (S.D.N.Y. Mar. 27, 2019).

have previously permitted settlements of approximately this percentage, particularly where plaintiffs face "major factual and legal litigation risks." *Zorn-Hill*, 2020 WL 5578357, at *4–5 (allowing a subset of plaintiffs to recover a settlement amount that was 12.5% of their best-case scenario recovery given that sampling data "suggest[ed]" that the claims were less than one-half of the amount alleged); *Aguilar v. N & A Prods. Inc.*, No. 19-CV-1703, 2019 WL 5449061, at *1–2 (S.D.N.Y. Oct. 24, 2019) (approving settlement of $40,000 where the plaintiffs estimated potential recovery was $570,000, or 7%, because there existed "substantial legal and factual disputes that go to the core of [the] [p]laintiff's claims"); *Redzepagic v. Hammer*, No. 14-CV-9808, 2017 WL 1951865, at *1 (S.D.N.Y. May 8, 2017) (approving a settlement of approximately 7.6%, or $49,080.82 out of a potential of $646,000, inclusive of liquidated damages, as "reduced to account for litigation risks and potential defenses"); *Penafiel*, 2015 WL 7736551, at *2 (approving a settlement of approximately 4%, or $21,000 based on an estimated $522,389.30, in part because there existed no records of the plaintiffs' wages or hours, meaning the plaintiffs "may have found it difficult to establish the full scope of their claims").

      Here, Defendants claim to have produced wage and hour records showing that Plaintiffs worked far fewer hours than alleged on certain workdays. (Second Joint Letter 5–6.) Additionally, Defendants assert that records demonstrate significant gaps in Perez's employment with Ultra Shine in 2014 and 2016, that Zacariaz's employment began in April 2019 rather than in January 2019, and that both Perez and Zacariaz ended their employment with Ultra Shine earlier than alleged. (*See id.* at 5.) Defendants therefore argue that Plaintiffs' total claimed damages would "not be easily proven, at the least because [P]laintiffs' claims rest on the unprovable assumption that the car wash never closed in bad weather," and therefore it would be "more realistic to compare the settlement amount to be paid to the [P]laintiffs with the amount

7

that [P]laintiffs could reasonably recover using the [D]efendant's time records." (*Id.* at 7.) The Court agrees. Therefore, although Plaintiffs' net recovery pursuant to the PSA is comparatively lower than normal, *Zorn-Hill*, 2020 WL 5578357, at *4, considering the substantial evidentiary and legal battles Plaintiffs would face proving their claims at trial, the Court is satisfied that the settlement amount is fair and reasonable.

### 2. Good Faith

The Court remains satisfied that the PSA was negotiated competently, in good faith, at arm's length, and that there was no fraud or collusion. (*See* 2021 Order 9; *see also* Second Joint Letter 8 (noting that the settlement "was reached as a result of extensive arm's length negotiations between counsel who are well versed in the prosecution and defense of wage and hour actions," and with the assistance of a mediator).)

### 3. Similarly Situated Plaintiffs

As detailed in the Court's prior opinion, there was some entanglement with Plaintiffs in this Action and litigants in a seemingly parallel action before a different jurist in this district. (*See* 2021 Order 9–10.) For that reason, the Court noted that the Parties should address the issue of similarly situated plaintiffs when submitting their revised settlement papers for approval. (*Id.* at 10.)

On February 22, 2022, Defendants filed a letter to supplement the Parties' revised joint submission requesting approval of the settlement agreement. (Letter from Stanley J. Silverstone, Esq., to Court (February 22, 2022) ("Silverstone Letter") (Dkt. No. 36).) This letter informed the Court that the plaintiff's claims in the purportedly parallel action were settled, wherein Magistrate Judge Krause approved the settlement. (*Id.*) Accordingly, neither the Court nor the

Parties are aware of "the presence of other employees situated similarly to the claimant[s]," *Wolinsky*, 900 F. Supp. 2d at 335, militating in favor of settlement, (*see* Silverstone Letter).

### 4. Release Provision

"[T]he FLSA is a uniquely protective statute," *Cheeks*, 796 F.3d at 207, and courts will not approve settlement agreements that contain overly broad release provisions that would "waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues," *id*. at 206 (quotation marks omitted) (quoting *Nights of Cabiria*, 96 F. Supp. 3d at 181); *see also Lazaro-Garcia v. Sengupta Food Servs.*, No. 15-CV-4259, 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015) ("If the parties wish to obtain approval of their settlement, any release provision must be limited to the claims at issue in this action."); *Gonzales v. Lovin Oven Catering of Suffolk, Inc.*, No. 14-CV-2824, 2015 WL 6550560, at *3 (E.D.N.Y. Oct. 28, 2015) (rejecting a settlement agreement where "the parties' release language . . . include[d] 'actions and/or claims against the [d]efendants, known or unknown, which [the plaintiff] may have as of the date of this [a]greement including but not limited to any alleged violation of any federal, state or local law, regulation, rule or ordinance which relates in any way to [the] [d]efendants' payment of wages to [the] [p]laintiff during [the] [p]laintiff's employment with [the] [d]efendants'"); *Flood v. Carlson Rests. Inc.*, No. 14-CV-2740, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015) (rejecting a settlement agreement that, in effect, "waive[d] any possible claims against [the] [d]efendants— including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues"). To that end, releases must generally be limited to wage and hour issues, *see Cheeks*, 796 F.3d at 206, and "may include claims not presented and even those which could not have been presented, but only when the released conduct arises out of the identical factual predicate as

9

the settled conduct," *Nights of Cabiria*, 96 F. Supp. 3d at 181 (citation and quotation marks omitted).

Here, the PSA release provides in relevant part:

> Plaintiffs, with respect solely and only to conduct that has arisen on, or prior to, the date this Agreement is executed, fully and forever release . . . Defendants . . . from all actions . . . concerning wage and hour matters including any and all claims arising under the [FLSA], the [NYLL], and the Wage Theft Prevention Act . . . during Plaintiffs' employment with the Defendants[.] This release is limited solely and only to wage and hour claims that have arisen on, or prior to, the date this Agreement is executed . . . .

(PSA ¶ 3.)

The Court has no reason to disrupt its prior interpretation of the release. (*See* 2021 Order 11–12.) "[W]hile broad, the terms of the release . . . relate[] specifically to wage and hour issues without encompassing, for example, prospective discrimination claims." *Pucciarelli v. Lakeview Cars, Inc.*, No. 16-CV-4751, 2017 WL 2778029, at *4 (E.D.N.Y. June 26, 2017); *cf. Rojas v. Bronx Moon LLC*, No. 17-CV-5825, 2018 WL 4931540, at *3 (S.D.N.Y. Oct. 10, 2018) (rejecting proposed settlement releasing "any and all FLSA claims and NYLL claims of any kind or nature"). Therefore, the Court approves the release.

5. Attorneys' Fees

Under both the FLSA and NYLL, a successful plaintiff—including one who settles—is entitled to attorneys' fees. *See Lizondro-Garcia v. Kefi LLC*, No. 12-CV-1906, 2015 WL 4006896, at *2 (S.D.N.Y. July 1, 2015) (citing, inter alia, 29 U.S.C. § 216(b), NYLL §§ 198, 663(1)). Although courts may elect to award fees by considering either the lodestar method—the reasonable hourly rate of the attorney multiplied by the number of hours reasonably expended—or the percentage method—a percentage of the total amount recovered by the plaintiffs—"[t]he trend in [the Second] Circuit is toward the percentage method." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). But even where attorneys' fees are sought

10

pursuant to the percentage of the fund method, "counsel must submit evidence providing a factual basis for the award." *Wolinsky*, 900 F. Supp. 2d at 336; *see also Guareno v. Vincent Perito, Inc.*, No. 14-CV-1635, 2014 WL 4953746, at *2 (S.D.N.Y. Sept. 26, 2014) ("Counsel must provide a factual basis for a fee award, typically with contemporaneous time records."). A proper fee request thus includes "contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done." *Nights of Cabiria*, 96 F. Supp. 3d at 181. The Court must also determine the reasonable hourly rate by considering the "prevailing market rate for lawyers in the district in which the ruling court sits." *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 507 (S.D.N.Y. 2012).

Here, Plaintiffs' counsel seeks an award of $22,000, (Second Joint Letter 7), which is approximately 33.8% of the Settlement Amount. Courts in the Second Circuit routinely award attorneys' fees in FLSA settlements of one-third of the total recovery. *See Zorn-Hill*, 2020 WL 5578357, at *6 (collecting cases); *Garcia v. Atlantico Bakery Corp.*, No. 13-CV-1904, 2016 WL 3636659, at *1 (S.D.N.Y. June 29, 2016) ("[O]ne-third of the total award is the customary contingency percentage in FLSA cases."); *see also Ocasio v. Big Apple Sanitation, Inc.*, No. 13-CV-4758, 2016 WL 5376241, at *2 (E.D.N.Y. Mar. 16, 2016) (noting that the fee sought was "less than the typical contingency fee percentage of 33 1/3%"), *adopted by* 2016 WL 5390123 (E.D.N.Y. Sept. 26, 2016).

In the 2021 Order, the Court noted that the attorney's fees requested appeared reasonable, but Plaintiffs' counsel had not provided "contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done." (2021 Order 13 (quoting *Nights of Cabiria*, 96 F. Supp. 3d at 181).) Plaintiffs' counsel has since provided the Court with a Billing Statement laying out the hours worked on this case by both counsel and

11

staff. (*See generally* Second Joint Letter Ex. 8 (Billing Statement) (Dkt. No. 34).) These records include the date, hours expended, and nature of the work done. (*See id.*) Accordingly, after reviewing these records, the Court is satisfied that the requirements as set out in *Nights of Cabiria* regarding documentation of attorney's fees have been met, and that the attorney's fees are themselves substantively reasonable.

### III. Conclusion

For the foregoing reasons, the Parties' request for approval of their Proposed Settlement Agreement is granted.

SO ORDERED.

DATED:   June 14, 2022
         White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE